IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JACQUELINE JOHNSON, | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | |
| vs. | : | |
| | : | |
| THRIVE HEALTHCARE, LLC and BRITTANY HILL, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

Plaintiff Jacqueline Johnson ("Johnson") brings this Complaint against Defendants Thrive Healthcare, LLC ("Thrive Healthcare") and Brittany Hill ("Hill") (collectively "Defendants"), and shows the Court as follows:

**1. INTRODUCTION**

1.

Thrive Healthcare employed Johnson as a home health aide from October 2019 through November 2021(hereinafter the "Relevant Time Period"). Defendants failed to pay Johnson the overtime premium during her employment thus violating the Fair Labor Standards Act.

1

2.

In addition to her federal causes of action, Johnson asserts pendent state law claims which arise out of the same set of operating facts as her federal claims. These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

(a) **Jurisdiction and Venue**

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Thrive Healthcare conducts business in Georgia, within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

(b) **The Parties**

5.

Johnson resides in Clayton County, Georgia.

6.

Thrive Healthcare employed Johnson as a home health aide from October 2019 through November 2021.

7.

At all times material hereto, Johnson was an "employee" of Thrive Healthcare within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

8.

Thrive Healthcare is a domestic limited liability company organized under the laws of the State of Georgia.

9.

At all times material hereto, Thrive Healthcare was an "employer" of Johnson within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

10.

Thrive Healthcare is subject to the personal jurisdiction of this Court.

11.

Thrive Healthcare may be served with process through its registered agent Brittany Hill located at 1301 Shiloh Road, NW, Suite 721, Kennesaw, Georgia 30144.

12.

At all times material hereto, Johnson was an "employee" of Hill within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

13.

Hill resides in Cobb County, Georgia.

14.

At all times material hereto, Hill was an "employer" of Johnson within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

15.

Hill is subject to the personal jurisdiction of this Court.

16.

Hill may be served with process at 1301 Shiloh Road, NW, Suite 721, Kennesaw, Georgia 30144 or wherever she may be located.

**(c) Individual Coverage**

17.

During the Relevant Time, Johnson regularly operated a telephone and a computer while performing services on behalf of Thrive Healthcare.

18.

During the Relevant Time Period, Johnson was "engaged in commerce" as employees of Thrive Healthcare within the meaning of 3(s)(1(A) and (B).

**(d) Enterprise Coverage:**

19.

At all times during the Relevant Time Period, Thrive Healthcare was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

20.

During 2019, Thrive Healthcare had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

21.

During 2020, Thrive Healthcare had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

22.

During 2021, Thrive Healthcare had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

23.

During the Relevant Time Period, Johnson and other employees of Thrive Healthcare handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Thrive Healthcare including, but not limited to, residential and office furniture, phones, computers, and office supplies.

24.

During 2019, Thrive Healthcare had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

During 2020, Thrive Healthcare had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2021, Thrive Healthcare had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

During 2019, Thrive Healthcare had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2020, Thrive Healthcare had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2021, Thrive Healthcare had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

At all times during the Relevant Time Period, Thrive Healthcare has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**(e) Statutory Employers**

31.

At all times during the Relevant Time Period, Hill was an owner and manager of Thrive Healthcare.

32.

At all times during the Relevant Time Period, Hill exercised operational control over Johnson's work activities.

33.

At all times during the Relevant Time Period, Hill managed the day-to-day operation of the Thrive Healthcare facility in which Johnson worked.

34.

At all times during the Relevant Time Period, Thrive Healthcare vested Hill with supervisory authority over Johnson.

35.

At all times during the Relevant Time Period, Hill exercised supervisory authority over Johnson.

36.

At all times during the Relevant Time Period, Hill scheduled Johnson's working hours or supervised the scheduling of Johnson's working hours.

37.

At all times during the Relevant Time Period, Hill exercised authority and supervision over Johnson's compensation.

**(f) No FLSA Exemptions are Applicable**

38.

At all times during the Relevant Time Period, Johnson was not exempt from the maximum hour requirements of the FLSA by reason of any FLSA exemption.

39.

Throughout the Relevant Time Period, Johnson was compensated on an hourly basis.

40.

At all times during the Relevant Time Period, Thrive Healthcare did not employ Johnson in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

41.

At all times during the Relevant Time Period, Thrive Healthcare did not employ Johnson in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

42.

At all times during the Relevant Time Period, Thrive Healthcare did not employ Johnson in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

43.

At all times during the Relevant Time Period, Johnson did not supervise two or more employees.

44.

At all times during the Relevant Time Period, Thrive Healthcare did not employ Johnson in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

**(g) Additional Factual Allegations**

45.

Throughout the Relevant Time Period, Johnson worked for Thrive Healthcare on a consistent and full-time basis.

46.

Throughout the Relevant Time Period, Thrive Healthcare's sole business purpose was providing home health services to its clients.

47.

Throughout the Relevant Time Period, Thrive Healthcare contracted with Medicare to provide services to their clients.

48.

Thrive Healthcare employed Johnson as a home health aide.

49.

Throughout the Relevant Time Period, Thrive Healthcare compensated Johnson on an hourly basis for her work as a home health aide.

50.

Johnson's primary duties included, but were not limited to, taking clients to shop and run errands; transporting clients to and from medical appointments; performing light housekeeping duties; assisting with bathing; assisting with clothing; assisting with feeding; assisting with toileting; and reminding clients to take their medication(s).

51.

From approximately October 2019 through approximately January 2021, Thrive Healthcare paid Johnson $12.00 per hour for her work as a home health aide.

52.

From approximately February 2021 through November 2021, Thrive Healthcare paid Johnson $13.00 per hour for her work as a home health aide.

53.

During the Relevant Time Period, Thrive Healthcare regularly scheduled Johnson to work seven (7) days per week.

54.

During the Relevant Time Period, Johnson worked seven (7) days during most work weeks.

55.

During the period from approximately October 2019 through July 2020, Johnson was normally assigned to work for two (2) clients on behalf of Thrive Healthcare.

56.

During the period from approximately October 2019 through July 2020, Johnson generally worked from 9:00 a.m. until 3:00 p.m. at the first client's home, Monday through Friday.

57.

During the period from approximately October 2019 through July 2020, Johnson generally worked from 4:00 p.m. until 8:00 p.m. at the second client's home, Monday through Friday.

58.

During the Relevant Time Period, Johnson generally worked from 9:00 a.m. until 3:00 p.m. during each work shift on Saturday and Sunday.

59.

During the period from approximately October 2019 through July 2020, Johnson usually worked 62-65 hours during most work weeks.

60.

During the period from approximately August 2020 through November 2021, Johnson was assigned to work for one (1) client on behalf of Thrive Healthcare.

61.

During the period from approximately August 2020 through November 2021, Johnson generally worked from 9:00 a.m. until 5:00 p.m. at the client's home Monday through Friday.

62.

During the period from approximately August 2020 through November 2021, Johnson generally worked from 9:00 a.m. until 3:00 p.m. at the client's home on Saturday and Sunday.

63.

During the period from approximately August 2020 through November 2021, Johnson usually worked 52-54 hours during most work weeks.

64.

During the Relevant Time Period, Thrive Healthcare paid Johnson every two (2) weeks.

65.

Throughout the Relevant Time Period, Thrive Healthcare required that Johnson submit Daily Service Checklists for payroll.

66.

Throughout the Relevant Time Period, Johnson submitted her time sheets to Defendants after her shift each Saturday by text, email or fax.

67.

Throughout the Relevant Time Period, Johnson often submitted her time sheets directly to Defendant Hill by email or to Thrive Healthcare's office.

68.

During the Relevant Time Period, Defendants were aware of the actual number of hours Johnson worked during each work week.

69.

Defendants knew or should have known that the FLSA applied to Johnson.

70.

Section 7 of the FLSA, 29 U.S.C. § 207, requires that Defendants compensate Johnson at a rate of one–and–one–half times her regular rate for all time worked in excess of forty (40) hours in a work week.

71.

Defendants knew or should have known that the Section 7 of the FLSA requires that Defendants compensate Johnson a premium for all time worked in excess of forty hours in a given workweek.

72.

During the Relevant Time Period, Johnson regularly worked more than forty (40) hours during a given workweek.

73.

During the Relevant Time Period, all of Johnson's working efforts were directed at serving Thrive Healthcare's customers.

74.

During the Relevant Period, Defendants failed to pay Johnson at one-and-one-half times her regular rate for time worked in excess of forty (40) hours in any and all workweek.

75.

Upon hire, Thrive Healthcare advised Johnson that she would be paid for mileage incurred transporting clients to medical appointments and on errands.

76.

During the period from approximately October 2019 through July 2020, Thrive Healthcare failed to compensate Johnson for the 15 minutes she drove between client locations during each workday, Monday through Friday.

77.

Thrive Healthcare promised to pay Johnson for mileage at a rate of $0.56 per mile for transporting clients to and from medical appointments, shopping and running errands.

78.

During the Relevant Time Period, Johnson drove a minimum of 20-30 miles per month transporting clients to and from medical appointments, shopping and running errands.

79.

During the Relevant Time Period, Thrive Healthcare was aware that Johnson incurred mileage each work week transporting clients to and from medical appointments, shopping and running errands.

80.

During the Relevant Time Period, Thrive Healthcare failed to compensate Johnson for any mileage she drove on behalf of Thrive Healthcare's clients.

### 2. COUNT 1 - FAILURE TO PAY OVERTIME

81.

The allegations in paragraphs 1-80 above are incorporated herein by reference.

82.

At all times during the Relevant Time Period, Johnson was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

83.

During the Relevant Time Period, Johnson regularly worked in Defendants' employ in excess of forty (40) hours during each work week.

84.

During the Relevant Time Period, Defendants failed to pay Johnson at one-and-one-half times her regular rate for time worked in excess of forty (40) hours during each work week.

85.

During the Relevant Time Period, Defendants willfully failed to pay Johnson at one–and–one–half times her regular rate for work in excess of forty (40) hours during each work week.

86.

Johnson is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

87.

As a result of the underpayment of overtime compensation as alleged above, Johnson is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

88.

As a result of the underpayment of overtime compensation as alleged above, Johnson is entitled to her litigation costs, including her reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

### 3.   COUNT 2 - BREACH OF CONTRACT

89.

The allegations in paragraphs 1-80 above are incorporated herein by reference.

90.

During the Relevant Time Period, Johnson and Thrive Healthcare were parties to a contract of employment (hereafter "the Contract").

91.

The Contract provided that Thrive Healthcare would pay Johnson for work that was performed by Johnson on behalf of and for the benefit of Defendant.

92.

Thrive Healthcare's failure to pay Johnson for mileage she accrued during the Relevant Time Period constitutes a material breach of the Contract.

93.

As the direct and foreseeable result of this breach, Johnson has sustained and continues to sustain damages in an amount to be proved at trial.

**4.     COUNT 3 – QUANTUM MERUIT**

94.

The allegations in paragraphs 1-80 above are incorporated herein by reference.

95.

From on or about October 2019 through November 2021, Johnson served as a home health aide for Thrive Healthcare.

96.

Johnson's services as a home health aide for Thrive Healthcare as described above was valuable to Thrive Healthcare.

97.

Thrive Healthcare requested Johnson's service as a home health aide.

98.

Thrive Healthcare knowingly accepted Johnson's services.

99.

The receipt of Johnson's services for Thrive Healthcare without compensation would be unjust.

100.

Johnson expected to be compensated at the time she provided her services as a home health aide.

101.

Johnson is entitled to a recover from Thrive Healthcare the reasonable value of the unreimbursed mileage she drove as a home health aide, the exact sum to be determined at trial.

### 5.  COUNT 4 - PROMISSORY ESTOPPEL

102.

The allegations in paragraphs 1-80 above are incorporated herein by reference.

103.

Thrive Healthcare promised to pay Johnson in return for services she performed on its behalf.

104.

Thrive Healthcare should have reasonably expected that Johnson would induce action in reliance of said promise, *i.e.,* serve as a home health aide for Thrive Healthcare.

105.

Thrive Healthcare's promise induced Johnson to act in reliance thereof, *i.e.,* to serve as a home health aide for Defendant, to her detriment.

106.

Johnson's service as a home health aide for Thrive Healthcare conferred a benefit on Thrive Healthcare.

107.

During the Relevant Time Period from October 2019 through November 2021, Thrive Healthcare failed to pay Johnson mileage in accordance with their promise.

108.

Johnson relied on Thrive Healthcare's promise to pay her mileage.

109.

Johnson's reliance on Thrive Healthcare's promise to pay mileage was reasonable.

110.

Injustice can only be avoided by enforcement of Thrive Healthcare's promise.

111.

Johnson is entitled to a recover from Thrive Healthcare the reasonable value of the mileage accrued in an amount to be determined at trial.

WHEREFORE, Johnson respectfully prays:

1. That she be awarded due but unpaid overtime compensation in an amount to be determined at trial against Defendants, jointly and severally, plus an additional like amount in liquidated damages;
2. That she be awarded her costs of litigation, including her reasonable attorneys' fees from Defendants, jointly and severally;
3. That she be awarded damages in an amount to be proved at trial against Thrive Healthcare for the state law claims herein asserted in amounts to be proven at trial;
4. That she be awarded nominal damages; and
5. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

                              **DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

101 MARIETTA STREET
SUITE 2650                                           */s/CHARLES R. BRIDGERS*
ATLANTA, GEORGIA 30303           CHARLES R. BRIDGERS
(404) 979-3150                                   GA. BAR NO. 080791
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com     */s/KEVIN D. FITZPATRICK, JR.*
kevin.fitzpatrick@dcbflegal.com     KEVIN D. FITZPATRICK, JR.
                                                    GA. BAR NO. 262375